IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **GOHEALTH, LLC**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:13-cv-02334 |
| | ) | |
| **PAUL SIMPSON**, **JOSEPH LOCONTI**, | ) | Hon. Edmond E. Chang |
| **JAKE MENDELL**, **ZOOM HEALTH, INC.**, | ) | |
| **LIGHTHOUSE INSURANCE GROUP, LLC**, | ) | Mag. Judge Sheila M. Finnegan |
| **CHUCK FARRO**, and **JASON FARRO**, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| **PAUL SIMPSON, JOSEPH LOCONTI,** | ) | |
| **JAKE MENDELL, ZOOM HEALTH, INC.**, | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GOHEALTH, LLC**, | ) | |
| | ) | |
| Counterclaim Defendant. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS COUNTS III, IV, V, VI, VII, VIII, IX,
X, AND XI OF PLAINTIFF'S SECOND AMENDED COMPLAINT**

{4582529:}

## I. INTRODUCTION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Zoom Health, Inc. ("Zoom"), Joseph LoConti ("LoConti"), Paul Simpson ("Simpson"), Jake Mendell ("Mendell") (collectively, the "Zoom Defendants") and Chuck Farro, Jason Farro, and Lighthouse Insurance Group, LLC ("Lighthouse") (collectively, the "Lighthouse Defendants") respectfully move this Court to dismiss Counts III, IV, V, VI, VII, VIII, IX, X and XI of Plaintiff GoHealth, LLC's ("Plaintiff") Second Amended Complaint ("SAC"). (Dkt. No. 71.)

The Zoom Defendants previously moved to dismiss Counts III, IV, and V of the Complaint, and the arguments advanced in support of dismissing these identical claims advanced in the SAC are incorporated herein. (*See* Dkt. Nos. 12, 23, and 62.) This Court should dismiss Count VI (Uniform Fraudulent Transfer Act) against the Zoom Defendants and Count IX (Unified Fraudulent Transfer Act) against the Lighthouse Defendants because Plaintiff's threadbare, conclusory allegation that Lighthouse did not provide "reasonably equivalent value" for the purchase of Zoom's assets is insufficient under Rule 8 notice pleading standards in the absence of any supporting facts. Moreover, this conclusory allegation also fails to meet the heightened pleading standards of Rule 9(b).

Count VII (Conspiracy) against the Lighthouse Defendants and Zoom Defendants also fails because civil conspiracy is not an independent tort claim, and all of Plaintiff's tort claims underlying the civil conspiracy claims against all of the Defendants fail as a matter of law. Count VIII (Aiding and Abetting Breach of Fiduciary Duty) against the Lighthouse Defendants is similarly deficient because the breach of fiduciary duty claim against the Zoom Defendants fails as a matter of law, and Illinois case law is clear that an aiding and abetting count cannot survive without an underlying actionable tort that a defendant aided and abetted.

{4582529:}

This Court should also dismiss Count X (Alter Ego/Piercing Corporate Veil of Lighthouse) against Chuck Farro and Jason Farro. As a threshold matter, piercing the corporate veil is an equitable remedy, not an independent cause of action. Even setting this aside, though, Plaintiff has failed to show that Lighthouse is a "dummy" or "sham" corporation for Chuck Farro or Jason Farro. First, Plaintiff does not satisfy *any* of the eleven factors used by courts to determine a unity of interest exists such that the separate personalities of Lighthouse and Chuck and Jason Farro no longer exist. Second, Plaintiff fails to show that adherence to Lighthouse's corporate existence would sanction a fraud or promote injustice, beyond perhaps the possibility that a judgment against Lighthouse on any of Plaintiff's claims could not be satisfied, and Plaintiff has not alleged any facts to support such a conclusion.

Finally, Count XI (Tortious Interference with Contract) against the Lighthouse Defendants fails to satisfy Rule 8 notice pleading standards because it does not set forth any plausible facts to support its conclusory allegation that the Lighthouse Defendants induced the Zoom Defendants to breach the Zoom, Simpson, or Mendell Agreements with GoHealth, nor does it specify how those Agreements were breached as a result of the Farros' conduct.

## II. RELEVANT FACTUAL BACKGROUND

For purposes of their Motion to Dismiss, Defendants take as true all of the well-pleaded allegations of the Complaint, as well as all reasonable inferences drawn therefrom. *See, e.g.*, *Midwest Gas Services, Inc. v. Indiana Gas Co., Inc.*, 317 F.3d 703, 709 (7th Cir. 2003).[1] In addition to its original claims, Plaintiff now asserts claims for civil conspiracy, aiding and abetting breach of fiduciary duty, Unified Fraudulent Transfer Act, alter ego/piercing corporate veil, and tortious interference with contract claims against the Lighthouse Defendants. The SAC

---

[1] Defendants expressly reserve the right to dispute any and all Plaintiff's allegations in the SAC.

also includes new claims (civil conspiracy and Unified Fraudulent Transfer Act) against the Zoom Defendants.

Plaintiff's scant and internally inconsistent factual allegations in support of its new claims are set forth in eight new paragraphs in the SAC. Specifically, Plaintiff now alleges that, unbeknownst to Plaintiff and during the course of a due diligence process in contemplation of Plaintiff acquiring Zoom's assets, the Zoom Defendants and the Lighthouse Defendants planned to sell Zoom's assets to Lighthouse without adequate consideration, allegedly for the purpose of fraudulently avoiding Zoom's financial obligations to Plaintiff. (Dkt. No. 71, ¶¶ 33-34.) Plaintiff also alleges that after the sale of Zoom assets to Lighthouse, Simpson and Mendell secured employment at Lighthouse for themselves and a number of other former Zoom employees and, upon information and belief, Simpson and LoConti became Lighthouse owners at some unspecified point in time. (*Id.*, ¶ 41.) And Plaintiff further alleges that the Farros "had a financial interest in, exercised control over, and/or influenced the direction of Zoom" and "retained control over Zoom's assets by virtue of their ownership and control over Lighthouse." (*Id.*, ¶ 42.) Plaintiff asserts no facts establishing the bases for or otherwise supporting the Farros' alleged control over Zoom.[2]

Finally, Plaintiff alleges that Zoom and Lighthouse negotiated agreements with insurers

---

[2] For its First Amended Complaint, Plaintiff affirmatively (and vaguely) alleged that the Farros had an ownership interest in Zoom. These allegations were directly rebutted by evidence produced in discovery in this case, some of which was in Plaintiff's possession long before it filed its original Complaint in March 2013. Faced with this reality, Plaintiff withdrew its First Amended Complaint and sought leave to file the SAC, replacing those factually inaccurate allegations of ownership with even more vague and undefined allegations that Farros somehow controlled Zoom. *See* Dkt. No. 67. Thus, Plaintiff's claims of the Farros' alleged control cannot be predicated upon ownership of Zoom. Moreover, because neither of the Farros was ever an officer, director, or even an employee of Zoom – and Plaintiff does not (and cannot) allege otherwise – their putative control over Zoom cannot be based upon either or both of the Farros acting in a position of authority or control over Zoom.

with whom Zoom had contracts and for whom Zoom had issued policies to assign to Lighthouse all commissions and overrides payable to Zoom pursuant to those contracts." (*Id.*, ¶¶ 43, 44.) This is the extent of the factual allegations underlying Plaintiff's new claims against the Zoom and Lighthouse Defendants.

## III. ARGUMENT

### A. Legal Standard.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a claim based upon the well-pleaded facts. *See, e.g., Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). The Court must dismiss any action that "fail[s] to state a claim on which relief can be granted" based solely on those pleaded facts. Fed. R. Civ. P. 12(b)(6). To state a claim, then, the pleading must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff states a plausible claim only if it "pleads factual content that allows he court to draw the reasonable inference that the defendant is liable." *Id.*

While the court must presume at the pleading stage that all factual allegations are true, it will not apply such a presumption of truth to conclusory allegations, legal conclusions couched as factual allegations, or implausible inferences. *See, e.g., id.*, at 677-78; *see also Twombly*, 550 U.S. at 555-56. The pleading must provide more than merely "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**B. The Court Should Dismiss the Unified Fraudulent Transfer Act Claims (Count VI and Count IX) as to All Defendants.**

**1. Plaintiff does not plead any facts in its SAC to support its conclusory allegation that Zoom's assets were purchased for "less than reasonably equivalent value" in violation of Rule 8(a), and lumps together all Defendants' actions in violation of Rule 9(b).**

Plaintiff's Counts VI and Count IX against the Zoom and Lighthouse Defendants, respectively fail to meet the pleading standards under Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure. Under Illinois' Unified Fraudulent Transfer Act ("UFTA"), a transfer made by a debtor is fraudulent when a creditor's claim arose before the transferred occurred, the debtor made the transfer for "less than reasonably equivalent value" in exchange for the transfer, and the debtor was insolvent at the time of transfer. 740 ILCS 160/5.

UFTA claims are subject to a heightened pleading standard under Rule 9(b). *See General Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1079 (7th Cir. 1997). Under this heightened pleading standard, the complaint must allege "what (or how much) was transferred, how it was made, who made it, who received it, and under what circumstances." *Id.* Furthermore, a complaint sounding in fraud may not merely "lump all the defendants together" and fail to specify "who was involved in what activity." *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990). Specifically, one court in this district explained:

> Where there are allegations of a fraudulent scheme with multiple defendants, as in the present case, the complaint must inform each defendant of the specific fraudulent acts which constitute the basis of the action against the particular defendant. Plaintiffs may not "lump" defendants together in general allegations of fraudulent activity, implying that each defendant is responsible for the statements and actions of others. Even where the role of each defendant is a matter particularly within the knowledge of the defendants, plaintiffs must make allegations as to each defendant "based on information and belief" and accompany the allegations with a statement of facts upon which the belief is founded.

*Coronet Ins. Co. v. Seyfarth*, 665 F. Supp. 661, 666 (N.D. Ill. 1987) (internal citations omitted)

{4582529:} 5

(granting motion to dismiss fraud claim for failure to satisfy Rule 9(b) pleading standards).

"Illinois courts have not elaborated on the meaning of 'reasonably equivalent value' except to note that a transfer lacks reasonably equivalent value if there is no or inadequate consideration." *Creditor's Committee of Jumer's Castle Lodge, Inc. v. Jumer,* 472 F.3d 943, 947 (7th Cir. 2007). The Seventh Circuit has recognized, however, "that because the IUFTA is a uniform act, we may look to cases decided under 11 U.S.C. § 548, as well as cases interpreting other states' versions of the Uniform Fraudulent Transfer Act (UFTA) to determine the meaning of the phrase." *Id.* In *Jumer's Castle Lodge,* the parties agreed to and the Seventh Circuit applied the following definition of reasonably equivalent value: "the test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received." *Id.,* citing *Barber v. Golden Seed Co., Inc.,* 129 F.3d 382, 387 (7th Cir. 1997).

Numerous courts have granted motions to dismiss UFTA or § 548 claims when the complaint sets forth little more than a formulaic recitation of the "less than reasonably equivalent value" element of the claims and fails to allege the value of what was transferred and what was received. *See, e.g., SE Property Holdings, LLC v. Braswell,* No. 13-0267, 2013 WL 4498700, at *5 (S.D. Ala., Aug. 21, 2013) (granting motion to dismiss Alabama UFTA claim because "[t]here are no well-pleaded facts plausibly suggesting that [the defendant] did not receive reasonably equivalent value for the subject real property. All we have is plaintiff's conclusory say-so, which is not entitled to the assumption of truth under *Iqbal/Twombly.*")[3]; *In re Garcia,* Adv. Proc. No. 12-1085, 494 B.R. 799, 815 (Bankr. E.D.N.Y. 2013) (granting the motion to dismiss the § 548 claim because the complaint "fails to plead any facts concerning the value of

---

[3] Opinions not published in an official reporter are attached hereto in alphabetical order as Exhibit 1, for the Court's reference.

Peter's membership interests as compared to the consideration received in exchange for them. Instead, Plaintiff merely states in conclusory fashion that he did not receive reasonably equivalent value."); *In re Innovative Commun. Corp.,* Adv. No. 09-3070, 2013 WL 1795940, at *8 (Bankr. D. Virgin Islands, April 29, 2013) (granting motion to dismiss § 548 claims because "the Complaint merely provides a near-verbatim recitation of the statutory element of section 548 without providing any facts to support the Trustee's assertion that … New ICC received less than reasonably equivalent value in exchange for the Transfers"); *In Re Crescent Resources, LLC.,* Adv. No. 11-01082, 2012 WL 195528, at *8 (W.D. Tex., Jan. 23, 2012) (granting motion to dismiss the § 548 claim under *Iqbal* and *Twombly* where the Complaint merely stated that "[t]he Debtor … received less than the reasonably equivalent value in exchange for the Transfer(s)" based on a finding it was a "threadbare recital of a cause of action's elements, supported by mere conclusory statements"); *In re Hydrogen, L.L.C.,* 431 B.R. 337, 353 (Bankr. S.D.N.Y. 2010) (granting motion to dismiss § 548 claim because "[i]n particular, there is a complete absence of facts supporting the allegation that the Debtor received less than reasonably equivalent value in exchange for the payments made to Defendants"); *In Re USDigital, Inc.,* 443 B.R. 22, 39 (D. Del. 2011) (granting motion to dismiss the Delaware UFTA Act and § 548 claims because "[c]onclusory or bare-bones allegations no longer suffice to survive a motion to dismiss. Here, the Trustee fails to provide any factual allegations supporting the assertion that USDigital did not receive reasonably equivalent value for the secured interest in the set top boxes."); *cf. RBS Citizens v. Gammonley,* No. 12 C 8659, 2013 WL 5753783, at *6 (N.D. Ill., Oct. 23, 2012) (denying motion to dismiss UFTA claim because the complaint sufficiently alleged defendants failed to receive reasonably equivalent value in exchange for the six transfers; each count alleged that defendants transferred property, ranging in fair market value from

thousands of dollars to over four million dollars, in return for either zero consideration or a mere $10.00).

Here, precisely like the cases set forth above where courts granted motions to dismiss for pleading insufficient factual allegations regarding the "less than reasonably equivalent value" element, the SAC fails under Rule 8 because Plaintiff fails to provide *any* facts to support its conclusory allegation that the Asset Purchase Agreement was for less than reasonably equivalent value. Indeed, the extent of Plaintiff's allegations is that the purchase price of Zoom's assets was $500,000 (Dkt. No. 71, ¶ 37) and that "the sale of Zoom to Lighthouse was not for reasonably equivalent value in exchange for the transfer." (*Id.*, ¶¶ 117, 142.) Nowhere does Plaintiff allege specifically which of Zoom's assets were transferred to Lighthouse.[4] Neither does Plaintiff allege the fair market value of the transferred assets, despite having engaged in a months-long due diligence investigation of Zoom and its assets in connection with Plaintiff's own proposed acquisition of an ownership interest in Zoom. (*See, e.g.*, Dkt. No. 71, ¶¶ 29-30). Plaintiff's threadbare allegations merely provide a near-verbatim recitation of an essential element of an UFTA claim without supporting factual bases in support in clear violation of *Iqbal* and *Twombly*; Plaintiff's conclusory "say-so" is not entitled to the assumption of truth. *See supra*, pp. 6-8.

Moreover, the SAC also fails to meet the heightened pleading standard of Rule 9(b). The SAC fails to allege how the $500,000 purchase of Zoom's assets was made, who made it, who received it, and under what circumstances. It impermissibly "lumps all the defendants together" and fails to specify "who was involved in what activity." *Coronet Ins. Co.*, 665 F. Supp. at 666.

---

[4] While Plaintiff alleges vaguely that Zoom's assets were transferred, it is clear from the SAC that not all of those assets were included. For example, Plaintiff specifically alleges that it has retained Zoom's book of business for insurance products sold through GoHealth – *i.e.*, "existing insurance policies on the books that continue to earn commissions, which GoHealth holds as collateral" – which is potentially Zoom's single most valuable asset. (Dkt. No. 71, ¶ 23.)

Accordingly, this Court should dismiss Counts VI and IX because they fail to meet the pleading standards of Rule 8 and Rule 9(b).

### 2. The UFTA claims fail as to the Individual Zoom and Lighthouse Defendants.

Additionally, the UFTA claims must be dismissed against the individual defendants because there is no basis to hold any of them personally liable under the UFTA. "Under Illinois law, a claim for a fraudulent transfer 'requires a debtor/creditor relationship.'" *APS Sports Collectibles, Inc. v. Sports Time, Inc.,* 299 F.3d 624, 629 (7th Cir. 2002). An individual defendant cannot be liable under the UFTA because of their status as "insiders" of a debtor corporation. *Id.* Rather, 740 ILCS 160/8 provides the creditor with various equitable remedies for the acts of "debtors" and "transferees," and 740 ILCS 160/9 provides for a money judgment against: "(1) the first transferee of the asset or the person for whose benefit the transfer was made; or (2) any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee." *Id.* at 630. In *APS,* the Seventh Circuit dismissed the UFTA claims against the corporate officers and shareholders in their individual capacities because the language of the UFTA simply does not permit a court "to impose *personal liability* on a corporate officer for authorizing a bad faith transaction that works to the detriment of a creditor." *Id.*, Similarly, Plaintiff does not, and cannot, establish a debtor/creditor relationship with any of the individual defendants because no such relationship exists, nor can it show any of the individual defendants were initial or subsequent transferees. Accordingly, the UFTA claims fail against the individual Zoom and Lighthouse Defendants.

### C. Count VII Fails Because There is No Plausible Independent Tort Claim.

Under Illinois law, the elements of civil conspiracy are:

(1) a combination of two or more persons, (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, (3) in the furtherance of which one of the conspirators committed an overt tortious or unlawful act.

*Siegel v. Shell Oil,* 656 F. Supp. 2d 825, 836 (N.D. Ill. 2009) (internal citations omitted.) "Under Illinois law, however, civil conspiracy is not an independent tort." *Id.,* citing *Thomas v. Fuerst*, 345 Ill.App.3d 929, 936 (1st Dist. 2004). "Instead, there must be an independent cause of action underlying a plaintiff's conspiracy claim." *Id.* (citation omitted); *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill.App.3d 416, 432 (1st Dist. 2000). Illinois courts regularly dismiss civil conspiracy claims when a plaintiff fails to establish a plausible independent tort underlying the claim. *See, e.g., Indeck,* 316 Ill.App.3d at 432; *Obi v. Chase Home Finance, LLC,* No. 11–cv–3993, 2012 WL 1802450, at *3 (N.D. Ill., May 15, 2012); *Allbritton v. City of Dolton,* No. 10 C 7581, 2012 WL 10516, at *7 (N.D. Ill., Jan. 3, 2012). Similarly, because all of the torts claims alleged in the SAC must be dismissed against all the Defendants as a matter of law for the reasons set forth herein, as well as in Defendants' Partial Motion to Dismiss (Dkt. No. 12), Reply in Support of Partial Motion to Dismiss (Dkt. No. 23), and Supplemental Reply in Support of Partial Motion to Dismiss (Dkt. No. 62), the civil conspiracy claims against all Defendants fails.

D. **Count VIII Fails Because There is No Plausible Claim for Breach of Fiduciary Duty.**

Plaintiff's aiding and abetting fiduciary duty claim (Count VIII) against the Lighthouse Defendants fails because there is no plausible claim breach of fiduciary duty claim against Defendants. (*See* Dkt. No. 12; Dkt. 23.) Under Illinois law, an aiding and abetting claim cannot survive in the absence of a fiduciary duty claim. *Timothy & Thomas LLC v. Viral Genetics, Inc.,* No. 06 C 1813, 2010 WL 3155972, at *22 (N.D. Ill., Aug. 10, 2010); *see also Yates v. John Marshall Law School,* No. 08 C 4127, 2009 WL 1309516, at *7 (N.D. Ill., May 11, 2009) (aiding and abetting claim cannot survive "without an underlying actionable tort that the defendant aided and abetted, resulting in his or her liability for that underlying tort.") Because the underlying breach of fiduciary duty claim fails against the Zoom Defendants, the aiding and abetting claim

against the Lighthouse Defendants fails as a matter of law.

**E.     Count X Fails Because Plaintiff's Alter Ego/Corporate Veil Piercing Claim is Not an Independent Cause of Action, and the SAC Contains No Plausible Facts to Justify Piercing Lighthouse's Corporate Veil.**

   **1.     "Piercing the corporate veil" is an equitable remedy and not an independent cause of action.**

For the reasons set forth in Defendants' Supplemental Reply to Plaintiff's Supplemental Response to Defendants' Partial Motion to Dismiss Counts III, IV and V of Plaintiff's Complaint (Dkt. No. 62), this Court should dismiss Plaintiff's "alter ego/veil piercing claim" against Chuck and Jason Farro because it is not an independent cause of action under Illinois law.

   **2.     Count X fails because Plaintiff cannot satisfy any of the elements for an alter ego/corporate veil piercing claim.**

Even if this Court concludes that alter ego/veil piercing is an independent claim, it should still dismiss Plaintiff's alter ego/veil piercing claim against Lighthouse, Chuck Farro, and Jason Farro in Count X of the SAC because Plaintiff fails to meet its burden of making a substantial showing that Lighthouse "is in fact a dummy or sham for another person or entity." *Source One Global Partners, LLC v. KGK Synergize,* No. 08 C 7403, 2009 WL 2192791, at *3 (N.D. Ill., July 21, 2009) (citations omitted) (granting motion to dismiss alter ego/veil piercing claim). "Piercing the corporate veil is not favored and, in general, courts are reluctant to do so." *Id.*

This Court should reject Plaintiff's attempt to pierce the corporate veil because Plaintiff has not met its burden of pleading plausible facts to establish the following elements of the claim: (1) there is "such unity of interest and ownership that the separate personalities of the corporation and the individual … no longer exist"; and (2) "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Source One Global Partners, LLC*, 2009 WL 2192791, at *3.

a. *Plaintiff has not pleaded any of the eleven "unity of interest" factors that must be satisfied to justify disregarding Lighthouse's corporate form.*

Courts look to and weigh the following factors when determining whether there is sufficient "unity of interest" to justify disregarding the corporate form:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant shareholders.

*Source One,* 2009 WL 2192791, at *3. Plaintiff's SAC contains no factual allegations that plausibly suggest that Lighthouse was inadequately capitalized, that Lighthouse failed to issue stock, that Lighthouse failed to observe corporate formalities or pay dividends, that Lighthouse was insolvent or had nonfunctioning officers or directors, that Lighthouse commingled its funds or diverted any of its assets to another person, or that Lighthouse was, in fact, a mere façade for the operations of the Farros.

While Plaintiff may again attempt to incorrectly argue, as it did in its Supplemental Response, that it can satisfy the tenth "unity of interest" factor – a failure to maintain arm's length relationships among related entities – that argument fails for the reasons stated in Defendants' Supplemental Reply. (Dkt. 62, at 6-7.) Specifically, Plaintiff offers only the following allegations in an attempt to show that Lighthouse and Zoom failed to maintain an arm's length relationship: (1) Simpson as CEO of Zoom assigned commissions due and owing to Zoom to Lighthouse after Lighthouse's purchase of Zoom's assets; and (2) in partial consideration for the asset transfer, the Zoom Defendants and other former Zoom employees accepted ownership, corporate officer positions with Lighthouse, or other consideration *after* the sale. (*See* Dkt. No. 61, ¶¶ 41, 44, 94.) First, Simpson's assignment of Zoom's commissions – a

Zoom asset – to Lighthouse is entirely consistent with Lighthouse's purchase of Zoom's assets. Plaintiff proffers no explanation as to why such an assignment is evidence of a "failure to maintain an arm's length relationship" between Zoom and Lighthouse. Rather, it was merely Simpson, in a proper and appropriate exercise of his authority as Zoom's CEO, delivering to Lighthouse that which Zoom was contractually obligated bound to provide under the asset purchase agreement.

Second, Illinois courts have found that the separate corporate entities of two corporations may not be disregarded merely because one owns the stock of the other or because the two share common officers. *See Sumner Realty Co. v. Willcott*, 148 Ill.App.3d 497, 501, 499 N.E.2d 554, 557 (5th Dist. 1986) (even where plaintiff demonstrated that parent and subsidiary had some identical officers, subsidiary rented its office space from parent, and used some of the same warehouses as parent, evidence insufficient to pierce the corporate veil).

Accordingly, because Plaintiff cannot establish *any* of the eleven "unity of interest" factors, this Court should grant Defendants' Motion to Dismiss Count X because Plaintiff fails to meet its substantial burden of showing there is such unity of interest and ownership that Lighthouse is a sham or dummy corporation, as required to justify piercing Lighthouse's corporate veil.

> b. *Plaintiff cannot satisfy the requisite "fraud or injustice" test necessary to pierce Lighthouse's corporate form.*

The Court should likewise dismiss Count IV because of Plaintiff's failure to allege any new facts in its Supplemental Response to show that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *See Source One,* 2009 WL 2192791, at *5 (citation omitted). This requires "something less than an affirmative showing of fraud, but something more than the prospect of an unsatisfied judgment." *Id.* (citation omitted).

The SAC contains no facts sufficient to establish that adhering to Lighthouse's corporate existence would sanction a fraud or promote injustice. The only alleged fact that Plaintiff offers to support such an argument against the Lighthouse Defendants is that LoConti and Simpson sold Zoom's assets to Lighthouse – an entity in which Plaintiff alleged Simpson and LoConti had a *future* financial or business opportunity – allegedly, for less than reasonably equivalent value and used the proceeds to pay certain creditors, but not GoHealth. (*See* Dkt. No. 11, at 9-10; Dkt. No. 23, at 8, citing Dkt No. 1, ¶¶ 59, 62.) This amounts to nothing more than the prospect of an unsatisfied judgment. The SAC is bereft of any facts that would support piercing Lighthouse's veil. Accordingly, because Plaintiff fails to satisfy either element of a plausible alter ego/veil piercing claim against the Farros, this Court should dismiss Count X.

F.  **Count XI Fails Because Plaintiff Fails to Allege any Facts to Support the Conclusory Allegation that the Lighthouse Defendants Induced or Caused a Breach of the Zoom, Simpson or Mendell Agreements.**

Plaintiff's Count XI for tortious interference with contract fails because it fails to provide any facts to support its conclusory allegation that the Lighthouse Defendants induced the Zoom Defendants to breach the Zoom Agreement, Simpson Agreement, or Mendell Agreement. In Illinois, the necessary elements of a tortious interference with contract claim are:

> (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.

*Polyad Co. v. Indopco Inc.,* No. 06 C 5732, 2007 WL 2893638, at *8 (N.D. Ill., Sept. 25, 2007). As a threshold matter, Plaintiff does not allege that it had a contract with LoConti, one of the Zoom Defendants. Therefore, Plaintiff's tortious interference with contract claim against the Lighthouse Defendants fails as it relates to LoConti.

Plaintiff's tortious interference claim against the Lighthouse Defendants relating to the

Simpson and Mendell Agreements are similarly unavailing. Plaintiff fails to allege any facts in its SAC supporting its conclusory allegations that the Lighthouse Defendants intentionally induced a breach of the Zoom, Simpson or Mendell Agreements. It is well-settled under Illinois law that "[n]ot only must plaintiff allege an intention to induce the breach, plaintiff must also allege facts indicating this intention and may not merely rest on conclusory allegations." *Western Microtechnology, Inc. v. Goold Electronics Corp.*, No. 91 C 7119, 1993 WL 424244 at *2 (N.D. Ill., Oct. 19, 1993). The Seventh Circuit held in a pre-*Twombly* case that a conclusory allegation in a complaint that defendant "intentionally and unjustifiably induced [third party] to breach an agreement or understanding with plaintiffs" is insufficient to state a claim as a matter of law. *Gold v. Wolpert*, 876 F.2d 1327, 1332 (7th Cir.1989). Here, precisely like the insufficient allegations in *Gold,* the SAC merely conclusorily asserts that "Lighthouse, through its owners and principals Chuck Farro and Jason Farro, intentionally and unjustifiably induced the Zoom Defendants to breach their contracts with GoHealth." The SAC similarly does not set forth any facts to specify which provisions of the Zoom, Simpson, or Mendell Agreements were breached as a result of any wrongful conduct by the Farros. Because Plaintiff offers no facts to support its conclusory allegations that the Farros induced Zoom, Simpson or Mendell to breach their Agreements or specify how – as a result of the Farros' conduct – the Agreements were breached, the SAC fails to satisfy notice pleading standards under *Iqbal* or *Twombly*.

## IV. CONCLUSION

For at least the foregoing reasons, as well as the reasons previously set out in support of their Motion to Dismiss, Defendants respectfully reiterate their request that the Court dismiss Count IV of the Amended Complaint in its entirety and with prejudice.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date:  November 22, 2013 | /s/ Jennifer D. Armstrong<br>Joseph J. Jacobi<br>Jennifer D. Armstrong<br>McDONALD HOPKINS LLC<br>300 N. LaSalle Street, Suite 2100<br>Chicago, Illinois 60654<br>Telephone: (312) 280-0111<br>Facsimile: (312) 280-8232<br>Email: jjacobi@mcdonaldhopkins.com<br>           jarmstrong@mcdonaldhopkins.com<br><br>*Attorneys for Defendants*<br>*Paul Simpson, Joseph LoConti,*<br>*Jake Mendell, Zoom Heath, Inc.,*<br>*Lighthouse Insurance Group, LLC,*<br>*Chuck Farro, and Jason Farro* |

## CERTIFICATE OF SERVICE

I, Jennifer Dowdell Armstrong, an attorney, hereby certify that on November 22, 2013 I electronically filed DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS III, IV, V, VI, VII, VIII, IX, X AND XI OF PLAINTIFF'S SECOND AMENDED COMPLAINT in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, these documents were served on all counsel who are deemed to have consented to electronic service. Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.

/s/Jennifer D. Armstrong
*Attorney for Defendants*