UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GOHEALTH, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 02334 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| PAUL SIMPSON; JOSEPH LOCONTI; | ) | |
| JAKE MENDELL; ZOOM HEALTH, | ) | |
| INC.; LIGHTHOUSE INSURANCE | ) | |
| GROUP, LLC; CHUCK FARRO; and | ) | |
| JASON FARRO, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

Plaintiff GoHealth, LLC brings this lawsuit against Defendants Zoom Health, Inc., Paul Simpson, Joseph LoConti, and Jake Mendell (collectively, the Zoom Defendants), and against Lighthouse Insurance Group, LLC, Jason Farro, and Chuck Farro (collectively, the Lighthouse Defendants), asserting a variety of Illinois state-law claims arising out of a failed business relationship between GoHealth and Defendants.[1] R. 71, Second Am. Compl. Defendants have moved to dismiss [R. 72] Counts Three (breach of fiduciary duty – Zoom), Four (veil piercing – Zoom), Five (indemnity), Six (Uniform Fraudulent Transfer Act – Zoom), Seven (conspiracy), Eight (aiding and abetting breach of fiduciary duty – Lighthouse), Nine (Uniform Fraudulent Transfer Act – Lighthouse), Ten (veil piercing –

---

[1] As explained in the November 26, 2013 Order [R. 76], this Court has subject matter jurisdiction under 28 U.S.C. § 1332.

1

Lighthouse), and Eleven (tortious interference with contract – Lighthouse) of GoHealth's Second Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). On November 26, 2013, the Court entered an Order [R. 76] deciding Counts Three (breach of fiduciary duty), Four (veil piercing of Zoom), and Five (indemnity) of Defendants' motion. The Court now addresses the remaining counts. For the reasons explained below, Defendants' partial motion to dismiss is granted in part and denied in part.

## I. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud

must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) requires that fraud claims "state the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks omitted). Put differently, fraud claims "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (internal quotation marks and citation omitted).

## II. Analysis

At issue in this Order are Counts Six (Uniform Fraudulent Transfer Act – Zoom), Seven (conspiracy), Nine (Uniform Fraudulent Transfer Act – Lighthouse), Ten (veil piercing – Lighthouse), and Eleven (tortious interference with contract – Lighthouse) of GoHealth's Second Amended Complaint.[2] The Court assumes the reader's familiarity with the relevant background of this case as described in the November 26 Order [R. 76] and will repeat below only what is necessary to decide the currently pending motion. In considering Defendants' Rule 12(b)(6) motion, the Court looks to both the Second Amended Complaint and the additional facts alleged

---

[2]Defendants also move to dismiss Count Eight (aiding and abetting breach of fiduciary duty – Lighthouse) of GoHealth's Second Amended Complaint. R. 72. But in light of the November 26 Order granting Defendants' motion to dismiss Count III (breach of fiduciary duty) GoHealth acknowledges that Count VIII (a dependent claim) must also be dismissed. R. 89, Pl.'s Br. at 2. So it is dismissed.

3

in GoHealth's supplemental brief [R. 96]; the Court allowed consideration of facts in the supplemental brief in lieu of allowing yet another amended complaint while the motion to dismiss was pending. The Court addresses each count in turn.

### A. Count Ten: Veil Piercing (Lighthouse)

In Count Ten, GoHealth seeks to pierce Lighthouse's corporate veil and hold Chuck and Jason Farro personally liable for Lighthouse's debts. See Second Am. Compl. ¶¶ 150-59. At the outset, Defendants reiterate their argument from the earlier motion to dismiss that veil-piercing is not an independent cause of action as a matter of Illinois state law. Def.'s Br. (citing R. 62 at 3-4). For the reasons explained in the November 26 Order with respect to Count Four, *see* R. 76 at 16-17, the Court construes Count Ten not as a standalone legal claim, but as a theory of personal liability for the other legal claims in the Second Amended Complaint. Because the imposition of personal liability against the Lighthouse Defendants affects the viability of other claims at issue in Defendants' motion, the Court addresses Count Ten first.

Generally, officers of a corporation are not liable for the corporation's debts and obligations. *Macaluso v. Jenkins*, 420 N.E.2d 251, 254 (Ill. App. Ct. 1981). If the corporation is merely the alter ego of its officers, however, a court may disregard the corporate form and pierce the corporate veil of limited liability to hold the officers personally liable. *Tower Investors, LLC v. 111 E. Chestnut Consultants, Inc.*, 864 N.E.2d 927, 941 (Ill. App. Ct. 2007). Specifically, courts may pierce the corporate veil if (1) there is such a unity of interest and ownership that the corporation and its

officers are no longer separate personalities, and (2) maintaining the fiction of a separate corporation would promote injustice or inequitable circumstances. *Id.*

On the first prong, unity of interest, Illinois law considers numerous factors, including the following:

> (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether the corporation is in fact a mere facade for the operation of the dominant stockholders.

*Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct. 2005). GoHealth contends that factors three (failure to observe corporate formalities), ten (failure to maintain an arms-length relationship), and eleven (Lighthouse was a mere façade) weigh in favor of veil-piercing. Pl.'s Br. at 10-11. But, as explained below, GoHealth has not adequately alleged any of these factors as to Lighthouse.

In going after Lighthouse, GoHealth tries to rely on the Court's prior conclusion that the veil-piercing allegations against *Zoom* were enough: GoHealth argues that the allegations are "sufficiently and similarly outlined as to Lighthouse to lead this Court to the same conclusion regarding Chuck Farro and Jason Farro." Pl.'s Br. at 10. But the Farros' alleged relationship with Lighthouse is markedly different from LoConti's and Simpson's alleged relationship with Zoom. Indeed, most of GoHealth's allegations regarding the Farros do not even relate to Lighthouse, highlighting instead the Farros' involvement with *Zoom*'s side of the allegedly fraudulent transaction. *See id.*; Second Am. Compl. at ¶ 32 (alleging

5

Farros "communicated regularly" with Zoom Defendants regarding Zoom's debt); *id.* ¶¶ 33-34, 40-41 (alleging Lighthouse Defendants participated in the asset transfer and employed a number of Zoom employees); *id.* ¶ 42 (alleging Farros, who had a financial interest in, exercised control over, and influenced direction of Zoom, retained control over Zoom's assets post-transfer); Pl.'s Supp. Br. at 6-8 (alleging Farros participated in Zoom's negotiations with another potential buyer). GoHealth does not explain how these allegations that the Farros were "equally complicit" in *Zoom*'s asset transfer, *see* Pl.'s Br. at 10, establish that *Lighthouse* was a mere "dummy or sham" for the Farros, *see Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 752 (7th Cir. 2012) (quotation marks omitted). And the current complaint's three-sentence, conclusory recitation of factors three, ten, and eleven is no more instructive. *See* Second Am. Compl. at 11.

In short, GoHealth has not pled enough facts to suggest that, as to Lighthouse and the Farros, "there is such a unity of interest and ownership that the separate personalities of the corporation and the parties who compose it no longer exist." *Tower Investors*, 864 N.E.2d at 941. Ultimately, the interests of justice may merit amendment of GoHealth's Second Amended Complaint after party depositions, but at this stage, GoHealth has not adequately stated a veil-piercing claim against the Farros. Defendants' motion to dismiss is granted as to Count Ten.

### B. Counts Six and Nine: Uniform Fraudulent Transfer Act

Count Six of the Second Amended Complaint alleges that the Zoom Defendants violated unspecified provisions of the Uniform Fraudulent Transfer Act

6

(UFTA) under Ohio, California, or Illinois law. Second Am. Compl. ¶¶ 112-121. Count Nine extends the same allegations to the Lighthouse Defendants. *Id.* ¶¶ 137-147. "Under the UFTA, there are two types of fraud; actual fraud or 'fraud in fact,' and constructive fraud or 'fraud in law.'" *Cordes & Co., LLC v. Mitchell Companies, LLC*, 605 F. Supp. 2d 1015, 1020 (N.D. Ill. 2009). "Fraud in fact exists when the debtor has the specific intent to hinder his creditors." *Id.* "Fraud in law exists when the debtor conveys assets for inadequate consideration, rendering himself insolvent during a time when he has existing or contemplated indebtedness." *Id.*

GoHealth alleges that the asset transfer from Zoom to Lighthouse was fraudulent under the UFTA because, among other reasons, it was made (1) "with actual intent to hinder, delay, and defraud GoHealth," (2) without "reasonably equivalent value," and (3) to "insiders." Second Am. Compl. ¶ 121. Based on these allegations, the Court construes Counts Six and Nine as having alleged both actual and constructive fraud. Defendants argue that GoHealth's UFTA claims should be dismissed for three reasons: (1) they are inadequately pled under Rule 8, (2) they are inadequately pled under Rule 9(b), and (3) the UFTA does not recognize individual liability for insiders of a debtor corporation. Def.'s Br. at 5-9.

Whether Rule 9(b)'s heightened pleading standard applies depends on which state's version of the UFTA applies,[3] so the Court first addresses which state's law

---

[3]*Compare Sunnyside Dev. Co. LLC v. Cambridge Display Tech. Ltd.*, 2008 WL 4450328, at *9 (N.D. Cal. Sept. 29, 2008) (Rule 9(b) does not apply to constructive fraud claim under California UFTA), *and Van-American Ins. Co. v. Schiappa*, 191 F.R.D. 537, 542 (S.D. Ohio 2000) (Rule 9(b) does not apply to constructive fraud claim under Ohio UFTA), *with General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997) (Rule 9(b) does apply to constructive fraud claim under Illinois UFTA).

7

applies in this case. Under Seventh Circuit law, the following choice-of-law analysis applies to GoHealth's claims:

> When a district court sits in diversity, it must apply the choice of law principles of the forum state to determine which state's substantive law governs the proceeding. In this case, . . . we look to Illinois's choice of law rules. For tort actions, Illinois instructs the court to ascertain the forum with the "most significant relationship" to the case. Under this test, the law of the place of injury controls unless Illinois has a more significant relationship with the occurrence and with the parties. Four factors are supposed to guide the court's decision: (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. The court evaluates these factors in light of the policies underlying the laws of those jurisdictions.

*Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006) (internal quotation marks and citations omitted). Applying these factors here, it is clear that Illinois law applies: (1) GoHealth's alleged injury occurred in Illinois, where it is domiciled and its services were rendered, Second Am. Compl. ¶¶ 2, 14; (2) Defendants' injury-causing conduct presumably occurred in California and Ohio, where Defendants are domiciled, *id.* ¶¶ 3-9; (3) the parties are, respectively, domiciled in Illinois, California, and Ohio, *id.* ¶¶ 2-9; and (4) the parties' contracts and the Second Amended Complaint show that their relationship was centered in Illinois, *id.* ¶¶ 6, 7, 14, 15, 18, 19; R. 71, Exh. A, Business Dev. Agreement ¶ 18; R. 71, Exh. B, Simpson Agreement ¶ 16. Because Illinois is both the place where GoHealth's injury occurred and also the state with the most significant relationship to the parties and to GoHealth's claims, the Court analyzes Counts Six and Nine under Illinois law. *See Tanner*, 433 F.3d at 915-16.

Under the Illinois Uniform Fraudulent Transfer Act (IUFTA), a transfer made by a debtor "is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or . . . became insolvent as a result of the transfer." 740 ILCS 160/6(a). Defendants argue that GoHealth's constructive-fraud claims under this provision of the IUFTA should be dismissed under Rule 8(a) because GoHealth has not adequately alleged that Zoom's assets were transferred to Lighthouse for "less than reasonably equivalent value."[4] Def.'s Br. at 5. Specifically, Defendants contend that GoHealth "fails to provide *any* facts to support its conclusory allegation that the Asset Purchase Agreement was for less than reasonably equivalent value" because GoHealth did not allege which assets were transferred or the fair market value of those assets. *Id.* at 8 (emphasis in original).

The Seventh Circuit has held that, in order to evaluate whether a transfer is fraudulent under the IUFTA, a court should "determine the value of what was transferred and . . . compare it to what was received." *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 947 (7th Cir. 2007) (citation omitted).

---

[4]Defendants' opening brief argued broadly that GoHealth's UFTA claims should be dismissed in their entirety because GoHealth inadequately alleged that Zoom transferred its assets for "less than reasonably equivalent value." Def.'s Br. at 5. But a transfer for less than reasonably equivalent value is only an element of a *constructive*-fraud claim, and not all forms of fraudulent transfer, as Defendants appear to concede in their more narrowly crafted reply brief. *See* 740 ILCS 160/6(a); R. 90, Def.'s Reply Br. at 5 (arguing instead that "[t]he constructive fraud claim under the UFTA fails because Plaintiff does not plead any facts to support its conclusory allegation that Zoom's assets were purchased for 'less than reasonably equivalent value'"). Thus, the Court limits Defendants' reasonably-equivalent-value argument to GoHealth's constructive-fraud claim under 740 ILCS 160/6(a).

9

GoHealth alleges that Zoom sold "all corporate assets to Lighthouse" in exchange for $500,000. Second Am. Compl. ¶¶ 1, 37. While GoHealth does not estimate the fair market value of the transferred assets, it does allege that before the Lighthouse transfer, its parent company, Norvax, LLC, had agreed to forbear on collecting $1,229,189.62 of Zoom's debt in exchange for a majority of Zoom's assets. *Id.* ¶ 30. At the motion-to-dismiss stage, the fact that Norvax would have exchanged $1.2 million in value for a majority of Zoom's assets is sufficient to support GoHealth's allegation that $500,000 was less than reasonably equivalent value for Zoom's assets. Thus, Defendants' motion to dismiss GoHealth's constructive-fraud claim on Rule 8(a) grounds is denied.

Defendants next argue that because both actual- and constructive-fraud claims are subject to Rule 9(b)'s heightened pleading standard under Illinois law, *see General Electric*, 128 F.3d at 1079, GoHealth's UFTA claims fail under that standard as well, Def.'s Br. at 8. In particular, Defendants contend that by impermissibly "lump[ing] all the defendants together" and failing to specify "who was involved in what activity," GoHealth has failed to allege how the $500,000 purchase of Zoom's assets was made, who made it, who received it, and under what circumstances. *Id.* (quoting *Coronet Ins. Co. v. Seyfarth*, 665 F. Supp. 661, 665 (N.D. Ill. 1987)).

It is true that the allegations in the Second Amended Complaint often group Defendants together without identifying individual defendants' involvement in the alleged fraud. *See, e.g.*, Second Am. Compl. at ¶¶ 33-35. With respect to Defendants

Simpson and LoConti, GoHealth has nevertheless pled sufficiently individualized allegations to satisfy the requirements of Rule 9(b): GoHealth plausibly alleges that LoConti and Simpson devised a plan to sell Zoom's assets secretly to Lighthouse, at a sham price, in order to avoid repaying debts owed to GoHealth, *id.* ¶ 34, and that LoConti and Simpson personally prevented even the proceeds from the Zoom asset sale ($500,000) from being paid to GoHealth, and instead redirected those proceeds into their own pockets, *id.* ¶¶ 93, 94. Altogether, GoHealth's allegations adequately identify which activities in the alleged fraud can be attributed to LoConti and Simpson. As to Defendant Mendell, however, GoHealth's allegations are inadequate. As a non-owner of Zoom who merely accepted a position at Lighthouse post-transfer, *see id.* ¶¶ 5, 41, Mendell's role in the alleged fraudulent transfer is unclear. The only allegations against Mendell in the context of the alleged fraud are those against the Zoom Defendants generally. These are insufficient to state a claim of fraud against Mendell under Rule 9(b). Thus, Defendants' motion to dismiss Count Six is granted as to Mendell and denied as to LoConti and Simpson. For reasons explained below, even assuming that GoHealth's allegations against the Lighthouse Defendants satisfy the 9(b) standard, Count Ten is nevertheless dismissed as to the Farros because there is no basis to hold them personally liable under the IUFTA.

Defendants' final argument in support of dismissing Counts Six and Nine is that the IUFTA does not permit the imposition of personal liability against the individual defendants. *See* Def.'s Br. at 9. The Seventh Circuit has explained that

11

"[u]nder Illinois law, a claim for a fraudulent transfer requires a debtor/creditor relationship." *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 629 (7th Cir. 2002) (internal quotation marks omitted). "The UFTA defines a 'debtor' as 'a person who is liable on a claim.'" *Id.* (quoting 740 ILCS 160/2(f)). Thus, individual defendants who were not parties to the loan transaction cannot be held liable because of their status as insiders of a debtor corporation. *Id.* at 629-30 ("[Plaintiff] fails to articulate a coherent theory why the individual defendants should be held liable under the UFTA. . . . [S]ince none of the individual defendants in this case was a party to the [Plaintiff's] loan transaction, their status as debtors cannot be established under any of the agreements.").

GoHealth does not address this basis for dismissal in any way in its briefs. But it does raise the related argument that the IUFTA allows personal liability against the individual Zoom Defendants and the individual Lighthouse Defendants by piercing the corporate veil of each corporation. Second Am. Compl. at 16, 27. In *APS Sports Collectibles*, although it did not reach the merits of the argument, the Seventh Circuit did recognize the possibility of imposing personal liability under the IUFTA by piercing the corporate veil. 299 F.3d at 631. Here, the Court has already determined that GoHealth has adequately pled a veil-piercing theory against Simpson and LoConti, November 26 Order at 20, but not as to the Farros. Accordingly, Count Six (IUFTA claim against Zoom Defendants) survives as to Simpson and LoConti, and Count Ten (IUFTA claim against Lighthouse Defendants) is dismissed as to Chuck Farro and Jason Farro.

### C. Count XI: Tortious Interference (Lighthouse)

Defendants next seek dismissal of GoHealth's tortious-interference-with-contract claim against the Lighthouse Defendants.[5] Under Illinois law, the necessary elements of a tortious-interference claim are "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *Polyad Co. v. Indopco Inc.*, 2007 WL 2893638, at *8 (N.D. Ill. Sept. 25, 2007). To adequately plead such a claim, Illinois law requires that "[n]ot only must plaintiff allege an intention to induce the breach, plaintiff must also allege facts indicating this intention and may not merely rest on conclusory allegations." *Western Microtechnology, Inc. v. Goold Elecs. Corp.*, 1993 WL 424244, at *2 (N.D. Ill. Oct. 19, 1993) (citing *Gold v. Wolpert*, 876 F.2d 1327, 1331-32 (7th Cir. 1989)). Defendants argue that because GoHealth has made only conclusory allegations that the Lighthouse Defendants intentionally and unjustifiably induced Zoom to breach its contracts with GoHealth, Count XI should be dismissed. Def.'s Br. at 14-15.

The Court agrees. The Second Amended Complaint alleges that the Lighthouse Defendants communicated with Zoom regarding Zoom's debts to GoHealth (Second Am. Compl. ¶ 32), accepted Zoom's assets as part of a "sham"

---

[5]Defendants argue that GoHealth's tortious-interference claim must fail as it relates to Defendant LoConti because GoHealth had no contract with LoConti. Def.'s Br. at 14. This argument must have been made in an abundance of caution, because GoHealth does not actually argue that it had a contract with LoConti, nor does it allege that the Lighthouse Defendants tortiously interfered with any such contract.

transfer (*id.* ¶¶ 33-34), employed a number of Zoom employees following the transfer (*id.* ¶ 40), and negotiated agreements with Zoom insurers to receive Zoom's commissions (*id.* ¶ 43). GoHealth's supplemental brief further alleges that Chuck Farro and Jason Farro were directly involved in negotiations between Zoom and another potential buyer, attended meetings related to those negotiations, received confidential email communications related to the negotiations, and were at one point identified by LoConti as "stockholders" of Zoom. R. 96, Pl.'s Supp. Br. at 3. Even assuming the truth of these allegations, Lighthouse's *participation* in the activities giving rise to alleged breaches of contract does not amount to intentional and unjustified *inducement* of those activities. Nor has GoHealth alleged any facts to suggest that Zoom's actions were, in fact, *caused by* Lighthouse's alleged inducement to breach its contracts with GoHealth. At most, GoHealth has alleged that the Lighthouse Defendants were aware of Zoom's obligations to GoHealth and complicit in an asset transfer that would allow Zoom to avoid those obligations. But these facts do not support GoHealth's conclusory allegation that "Lighthouse, through its owners and principals Chuck Farro and Jason Farro, intentionally and unjustifiably induced the Zoom Defendants to breach their contracts with GoHealth." Second Am. Compl. ¶ 164. Accordingly, GoHealth has not adequately pled a tortious-interference claim, and Defendants' motion to dismiss is granted as to Count XI.

## D. Count VII: Conspiracy

Finally, Defendants argue that GoHealth's conspiracy claim must be dismissed because GoHealth has failed to establish a plausible independent tort underlying that claim. Def.'s Br. at 11; *see Thomas v. Fuerst*, 803 N.E.2d 619, 625-26 (Ill. App. Ct. 2004) ("Conspiracy is not an independent tort. Where, as here, plaintiff fails to state an independent cause of action underlying his conspiracy allegations, the claim for conspiracy also fails."). As explained above, GoHealth's IUFTA claims survive as to Defendants Zoom, LoConti, Simpson, and Lighthouse. Moreover, Defendants have not moved to dismiss Counts One and Two of GoHealth's Second Amended Complaint, alleging breaches of contract by Zoom, Simpson, and Mendell. Because those claims may serve as the substantive claim underlying a conspiracy claim, *see Rubbermaid, Inc. v. Robert Bosch Tool Corp.*, 2010 WL 3834410, at *5 (C.D. Ill. Sept. 23, 2010) ("The UFTA does not specifically provide for a conspiracy cause of action; however, the UFTA may be supplemented by applicable state law claims such as conspiracy and aiding and abetting. (citing 740 ILCS 160/11)); *Miyano Machinery USA, Inc. v. Zonar*, 1994 WL 233649, at *6 (N.D. Ill. May 23, 1994) ("Illinois does recognize a cause of action for conspiring with a third party to breach one's own contract."), Defendant's motion to dismiss Count VII of GoHealth's Second Amended Complaint is denied, to the extent the underlying substantive claim remains in the case.

## IV. Conclusion

For the reasons stated above, Defendants' motion to dismiss GoHealth's Second Amended Complaint [R. 72] is granted in part and denied in part: Count Six (UFTA – Zoom) is dismissed without prejudice as to Defendant Mendell; Count Eight (aiding and abetting breach of fiduciary duty – Lighthouse) is dismissed with prejudice as to all Lighthouse Defendants; Count Nine (UFTA – Lighthouse) is dismissed without prejudice as to Defendants Chuck Farro and Jason Farro; Count Ten (Veil Piercing – Lighthouse) is dismissed without prejudice as to Defendants Chuck Farro and Jason Farro; and Count Eleven (tortious interference with contract – Lighthouse) is dismissed without prejudice as to all Lighthouse Defendants. Defendants' motion to dismiss is denied as to Count Six (UFTA – Zoom) against Defendants Zoom, LoConti, and Simpson; Count Seven (conspiracy) as to all Defendants; and Count Nine (UFTA – Lighthouse) as to Lighthouse.

Between this Order and the Court's November 26 Order, the following claims remain: Count One (breach of contract – Zoom); Count Two (Breach of Contract – Simpson, Mendell); Count Four (Veil Piercing – LoConti, Simpson); Count Five (indemnity – Zoom, Simpson, Mendell); Count Six (UFTA – Zoom, LoConti, Simpson); Count VII (conspiracy – all Defendants); Count Nine (UFTA – Lighthouse).

ENTERED:

    s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 24, 2014